**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

**DENISE PARKER,**

      **Plaintiff,**

    v.                                                          **Case No. 08-C-0003**

**MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,**

      **Defendant.**

## DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Denise Parker ("Parker"), commenced this action on January 2, 2008, seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. On July 9, 2008, the Court dismissed Parker's action without prejudice for lack of prosecution. On July 29, 2008, Parker filed a motion to reopen the case, and on August 5, 2008, the Court granted Parker's motion and reopened the case. Parker's appeal will be addressed herein.

## PROCEDURAL HISTORY

Parker filed an application for disability insurance benefits on May 20, 2003, and an application for supplemental security income with a protective filing date of May 1, 2003. (Tr.

86-89, 515-18.) Parker's application was denied initially and upon reconsideration and Parker requested a hearing. (Tr. 27-38.) The hearing was initially scheduled for December 7, 2005. On December 7, 2005, the administrative law judge ("ALJ") postponed the hearing so Parker could obtain counsel. (Tr. 601-06.)

On January 31, 2006, a hearing was held and Parker testified. At this hearing, Parker was unrepresented and waived legal representation. Ronald Raketti, an impartial vocational expert, appeared and testified at this hearing. (Tr. 571-600.) Parker retained counsel and on May 21, 2007, a supplemental hearing was held. Parker testified at this second hearing with the assistance of counsel. Jacquelyn E. Wenkman, an impartial vocational expert, also testified at the second hearing. (Tr. 523-70.)

In a July 20, 2007, decision, the ALJ denied Parker's claim. (Tr. 17-24.) Parker was born on September 7, 1961, and at the time of the ALJ's decision, was forty-five years old. Parker was thirty-eight years old on her alleged disability onset date of August 31, 2000. Parker completed the 9th grade. Parker's work history includes past work as a deli worker, cashier and housekeeper.

The ALJ conducted the standard five-step evaluation to determine whether Parker is disabled. At step one, the ALJ determined that Parker had not engaged in substantial gainful activity since August 31, 2000, the alleged onset date. At step two, the ALJ determined that Parker has the severe impairments of chronic pelvic pain (etiology unknown), asthma, and bilateral ovarian dermoids (cysts). (Tr. 20.) At step three, the ALJ determined that Parker's impairments or combination of impairments did not meet or medically equal one of the listed

impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). The ALJ next determined that Parker retained the residual functional capacity for light work with occasional stooping or crouching and a sit/stand option. (Tr. 20.)

The ALJ consulted a vocational expert at both hearings. At the first hearing, the vocational expert testified that an individual with Parker's age, education, work experience, and residual functional capacity would be able to perform the requirements of representative occupations such as counter attendant (deli) and counter attendant (retail). At the supplemental hearing, the vocational expert testified that such an individual would be able to perform the occupations of assembler, sorter and packager. (Tr. 23.) At step five, the ALJ agreed that Parker was capable of making a successful adjustment to these types of employment that exist in significant numbers in the economy. The AL concluded that Parker was not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Parker's request for review on November 7, 2007. (Tr. 5-7.)

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental impairments prevent her from doing not only her previous work, but any other substantial gainful

employment which exists in the national economy considering her age, education and work experience.  42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is so disabled, the ALJ is required to evaluate in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether her impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"), which the Commissioner acknowledges to be conclusively disabling; (4) whether the claimant possesses the residual functional capacity to perform her past relevant work; and (5) whether the claimant is capable of performing any other work existing in significant numbers in the national economy given her age, education, and work experience.  *See Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *Wolfe v. Shalala*, 997 F.2d 321, 322-3 (7th Cir. 1993).  If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must demonstrate that she lacks the residual functional capacity to perform her past work.  The claimant bears the burden at steps one through four.  *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  Once step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy.  *Id.*; *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Knight*, 55 F.3d at 313.  The process is sequential and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then the ALJ need not progress to the next step.  20 C.F.R. § 404.1520(a)(4).

Review of the Commissioner's decision is limited.  *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007) ("Substantial evidence must be more than a scintilla but may be less than a preponderance.") (citation omitted).  This Court reviews the entire administrative record but does not reconsider facts, reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869.  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford*, 227 F.3d at 869.

## ANALYSIS

In this case, the ALJ conducted the standard five-step evaluation to determine whether Parker is disabled and denied Parker's claim at step five.  On appeal, Parker asserts several challenges to the ALJ's decision.  Parker first argues that the ALJ did not comply with the requirements of Social Security Ruling ("SSR") 96-8p.

SSR 96-8p requires that the ALJ evaluate all the relevant evidence in the record in order to conduct a function-by-function analysis of a claimant's capacity for work.

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p, 1996 WL 374184, *1. Contrary to Parker's assertion, SSR 96-8p does not require the ALJ to make specific, written finding on each and every exertional and nonexertional function. The SSR explicitly provides the information which must be articulated in the section entitled "Narrative Discussion Requirements." According to that section, an ALJ is not required to set forth a function-by-function analysis, but rather should "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* at *7.

In this case, the ALJ reasonably considered all of Parker's impairments in determining that Parker retained the residual functional capacity for light work. The residual functional capacity is the most a claimant can do despite his or her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When determining a claimant's residual functional capacity, an ALJ must consider "all of the relevant medical and other evidence," including medical source statements and descriptions from the claimant and others about what the claimant can still do. 20 C.F.R. § 404.1545(a)(3).

The ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 20 citing 20 C.F.R. § 404.1529, 20 C.F.R. 416.929, SSR 96-4p, and SSR 96-7p.) The ALJ

- 6 -

Case 2:08-cv-00003-RTR   Filed 03/19/09   Page 6 of 13   Document 22

also considered opinion evidence. (Tr. 20 citing 20 C.F.R. § 404.1527, 20 C.F.R. 416.927, SSR 96-2p, SSR 96-5p, SSR 96-6p and SSR 96-3p.) The ALJ carefully reviewed the medical evidence and noted that there were no medical records submitted documenting Parker's medical history prior to 2003. The ALJ discussed that Parker has complained of pelvic pain for many years but that her physicians were unable to determine the etiology of that pain. (Tr. 20 citing Exs. 22F, 20F, 19F, 16F, 15F, and 4F.) The ALJ discussed that there is "little objective evidence to support the claimant's allegations of extreme pain." (Tr. 21.) Prior to 2003, Parker underwent a hysterectomy for fibroids. (Tr. 154.) Parker continued to experience chronic pelvic pain.

In July 2003, a state agency physician, John P. McDermott, M.D., opined that Parker could lift no more than fifty pounds occasionally, lift no more than twenty pounds frequently, stand and/or walk for a total of about six hours in an eight-hour day; sit for a total of about six hours in an eight-hour day; and push and/or pull an unlimited amount. (Tr. 184-91.) In November 2003, a state agency physician, M. J. Baumblatt, M.D. ("Baumblatt"), opined that Parker could lift no more than twenty pounds occasionally, lift and/or carry no more than ten pounds frequently, stand and/or walk for a total of about six hours in an eight-hour day; and sit for a total of about six hours in an eight-hour day. (Tr. 206-13.) Baumblatt noted no push/pull restrictions and no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 206-13.) Baumblatt also noted that Parker had a "very low pain threshold." (Tr. 208.)

In 2006, Parker had a CT scan which indicated she had adhesions in her ovaries. (Tr. 21 citing Ex. 22F.) During a laparotomy, the masses in each ovary were found to be dermoids – a type of non-malignant cyst. Parker's ovaries were removed but Parker continued to complain

of chronic, unrelenting pain. The ALJ specifically noted that since 2003, Parker had tried physical and occupational therapy and takes pain medication. The ALJ discussed that Parker visited a pain management clinic once and failed to follow up after that initial visit. The ALJ also noted that Parker indicated that she could not sit or stand for long periods of time and bending is painful for Parker. (Tr. 22.)

The ALJ's decision demonstrates that the ALJ considered the entire medical record. The ALJ specifically determined that Parker could perform light work,[1] with occasional stooping or crouching and a sit/stand option. The ALJ's decision is supported by the opinion evidence of the state agency physicians who opined that Parker was capable of performing the exertional requirements of light work. *Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004) (it is appropriate for an ALJ to rely on the opinions of state agency physicians who are considered experts in social security disability evaluations); *see* 20 C.F.R. 404.1527(f) and 416.927(f). The ALJ also considered Parker's testimony and limited Parker to only occasional stooping or crouching and a sit/stand option. The ALJ need not conduct a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record. Moreover, the ALJ need not provide a written evaluation of every piece of evidence.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long period of time. 20 C.F.R. § 404.1567(b).

*Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). The ALJ need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The Court concludes that the ALJ's determination of Parker's residual functional capacity meets the requirements of SSR 96-8p and is upheld.

Parker argues that the ALJ did not adequately assess Parker's credibility based upon the requirements of SSR 96-7p. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, measures used to relieve the pain, and limitations. *See* SSR 96-7p; 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929. An ALJ's credibility finding must be justified with specific reasons. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear witnesses and assess their forthrightness." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Accordingly, an ALJ's credibility determination will not be disturbed unless it is "patently wrong" and not supported by the record. *Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003).

The ALJ determined that Parker's statements concerning the intensity, persistence and limiting effects of her symptoms "are not entirely credible." (Tr. 21.) The ALJ discussed the medical evidence and noted that the "there is little objective evidence to support the claimant's allegations of extreme pain." (Tr. 21.) The ALJ further noted that the "claimant's pain is well out of proportion to any objective finding." (Tr. 22.) The ALJ noted that the medical record does not include any evidence from August 2000, the alleged onset of disability, to February,

- 9 -

2003. As previously discussed, the ALJ summarized the medical evidence. The ALJ noted that Parker attended one session at a pain clinic, but failed to follow-up in order to continue receiving treatment. (Tr. 22.) The Court notes that the reason for this lack of follow-up is not explained in the record. The repeated failure, however, of a claimant to seek medical treatment provides support for an ALJ's credibility finding. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). The Court acknowledges that the record demonstrates that Parker sought medical treatment for her chronic pelvic pain, and therefore, Parker's situation is distinguishable from the claimant in *Sienkiewicz*. Nonetheless, Parker had an opportunity to attend a pain management clinic and did not continue. The ALJ further noted that Parker is using a cane that no physician prescribed for her. (Tr. 22.)

While the ALJ did appear to be concerned with the lack of objective medical evidence in the record, the ALJ identified all of the factors in Social Security Ruling 96-7p and listed reasons for finding Parker not entirely credible. The ALJ did consider that the medical record shows that Parker's physicians do not know what is causing her reported extreme pain. Despite the lack of objective medical evidence, the ALJ gave Parker "every benefit of the doubt" and accepted that Parker's chronic pelvic pain of an unknown etiology is a severe impairment. (Tr. 22.) Taking all these factors into account, the ALJ did not deny that Parker has pain and other symptoms, but that Parker is not so limited that she is unable to perform the demands of light work. (Tr. 22.) The ALJ limited Parker to light work and incorporated a sit/stand option and bending limitations. The ALJ gave sufficient deference to Parker's subjective claims in light of the record as a whole to satisfy the requirements of SSR 96-7p.

- 10 -

The ALJ provided good reasons for her credibility finding and Parker has not shown that those reasons are patently wrong. The ALJ's credibility determination is entitled to deference. *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) (a credibility determination will be affirmed "as long as the ALJ gives specific reasons that are supported by the record for his finding. . . . The ALJ thus complied with SSR 96-7p by providing specific reasons for his finding."). In this case, the ALJ's credibility determination meets the standard in *Skarbek* and is affirmed.

Parker argues that the ALJ improperly rejected the opinions of Parker's treating physicians. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R.§ 404.1527(d)(2)*; see Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008). However, "while the treating physician's opinion is important, it is not the final word on a claimant's disability . . . [as a] patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). Moreover, a claimant is not entitled to disability benefits simply because her physician states she is "disabled" or unable to work. "The Commissioner, not a doctor selected by a patient to treat her, decides whether a claimant is disabled." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). The Court of Appeals for the Seventh Circuit has regularly noted that "the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore, . . . a consulting

- 11 -

physician's opinion might have the advantages of both impartiality and expertise." *Id.* (citing *Stephens v. Heckler*, 766 F.2d 284, 289 [7th Cir. 1985]).

In this case, the ALJ gave the opinion of Parker's treating physician, Syed Quadri, M.D. ("Quadri"), "very little weight." (Tr. 22.) Quadri opined that Parker could lift no more than five pounds occasionally and frequently, stand and walk for least two hours a day and sit for one hour a day. (Tr. 300.) The ALJ determined that Quadri's opinion did not have an objective basis for the limitations and seemed to be based solely on Parker's subjective complaints. (Tr. 22.) Moreover, Quadri's opinion was inconsistent with the state agency physicians who opined that Parker could perform the demands of light work. Thus, the ALJ provided an adequate explanation for her decision not to give controlling weight to Quadri's opinion.

Parker also contends that the ALJ improperly rejected the opinion of Tamyra Trice ("Trice"), a physician's assistant. Trice opined that Parker could lift nothing; stand and/or walk for no more than thirty minutes during an eight-hour day, and sit for at least two hours during an eight-hour day. (Tr. 310-11.) The ALJ properly noted that Trice was not an acceptable medical source under the regulations for establishing an impairment. (Tr. 22.) *See* 20 C.F.R. 404.1513 (detailing sources who can provide evidence to establish an impairment). While the opinion of a physician's assistant may be considered by an ALJ in order to offer insight into the severity of an impairment, Trice's extreme limitations, including Parker's inability to lift anything, was contradicted by Quadri, as well as the state agency physicians. The ALJ gave a reasonable explanation for discounting Trice's opinion. In this case, the ALJ reasonably

- 12 -

Case 2:08-cv-00003-RTR   Filed 03/19/09   Page 12 of 13   Document 22

resolved conflicting medical evidence, which is precisely the role of the ALJ. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

In conclusion, the ALJ properly evaluated the evidence in the record and adequately articulated her reasons for denying Parker's claim for disability insurance benefits and supplemental security income. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Parker retained the residual functional capacity to perform light work and was not disabled. Therefore, Parker was not entitled to disability insurance benefits or supplemental security income and her appeal is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Parker's appeal from the Commissioner's final decision denying her May 20, 2003, application for disability insurance benefits and May 1, 2003, application for supplemental security income is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of March, 2009.

BY THE COURT:

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**Chief Judge**